FILED
OCT 3 1 2007
MICHAEL E. KUNZ, Clerk
By_____
Dep. Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

—————————————————— :
                                    :
IN RE: GENERAL INSTRUMENT CORP. :          CIVIL ACTION NO. 01-3051 (LR)
SECURITIES LITIGATION            :
—————————————————— :

**DECLARATION OF JEFFREY W. GOLAN, ESQUIRE, IN RESPONSE
TO COURT ORDER OF OCTOBER 18, 2007, ENTERED UPON
CONSIDERATION OF THE NOTICE OF INTENT OF PLAINTIFFS' CO-
LEAD COUNSEL TO DISTRIBUTE REMAINDER OF FUND TO NON-
SECTARIAN, NOT–FOR-PROFIT SECTION 501(c)(3) ORGANIZATIONS**

I, Jeffrey W. Golan, make the following declaration pursuant to 28 U.S.C. § 1746,

in response to this Court's Order dated October 18, 2007:

1.      I am a partner of the law firm, Barrack, Rodos & Bacine, Plaintiffs'

Liaison Counsel in the above-captioned matter, and a member in good standing of the

Bar of this Court.

2.      Attached as Exhibit 1 hereto is a Declaration of Jennifer R. Clarke,

Executive Director of the Public Interest Law Center of Philadelphia, in response to this

Court's Order dated October 18, 2007.  Pursuant to the Notice of Intent filed October 9,

2007, the Public Interest Law Center of Philadelphia would receive two-thirds of the

amount remaining in the Settlement Fund in this case.

3.      Attached as Exhibit 2 hereto is a Declaration of Barbara Berger

Opotowsky, the Vice President of the City Bar Justice Center, the *Pro Bono* Affiliate of

the Bar of the City of New York, in response to this Court's Order dated October 18,

2007.  Pursuant to the Notice of Intent filed October 9, 2007, the City Bar Justice Center

would receive one-third of the amount remaining in the Settlement Fund in this case.

4.      Attached as Exhibit 3 hereto is an Affidavit of Bruce H. Cozzi, the Fund Controller of Gilardi & Co. LLC, setting forth, *inter alia*, the amount of $6,561.74 as the amount available for *cy pres* distribution in the Settlement Fund in this case.

5.      Pursuant to the Order entered October 18, 2007, I hereby confirm that neither Co-Lead Counsel for Plaintiffs nor the Claims Administrator has made the distribution proposed in the Notice of Intent, pending further order of the Court.

For Plaintiffs' Co-Lead Counsel:

Jeffrey W. Golan
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Tel: 215-963-0600
Plaintiffs' Liaison Counsel

## CERTIFICATE OF SERVICE

I, Jeffrey W. Golan, hereby certify that on this 31st day of October, 2007, I caused

the foregoing Declaration of Jeffrey W. Golan, Esquire, to be served, by hand delivery,

upon counsel for defendants, as follows:

> Steven E. Bizar, Esquire
> Buchanon Ingersoll & Rooney PC
> 1835 Market Street
> 14th Floor
> Philadelphia, PA  19103-2985

And upon Plaintiffs' Co-Lead Counsel, by email, as follows:

> George A. Bauer, III, Esquire
> GBauer@milbergweiss.com
>
> Daniel Hume, Esquire
> dhume@kmslaw.com

Jeffrey W. Golan

# EXHIBIT A

FILED

OCT 3 1 2007

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## DECLARATION OF JENNIFER R. CLARKE
## PURSUANT TO OCTOBER 18, 2007 ORDER

I, Jennifer R. Clarke, make the following declaration pursuant to 28

U.S.C. § 1746, in response to this Court's Order dated October 18, 2007.

1. I am the Executive Director of the Public Interest Law Center of

Philadelphia (the "Law Center"). I have held this position since February 1, 2006.

2. Prior to my arrival at the Law Center, I had been a partner at Dechert

LLP since 1991. I focused on complex, multi-party class action litigation. I was an

associate at Dechert Price & Rhoads from 1987 until I became a partner in 1991 and I

was an associate at White & Case from 1983 until 1987. I graduated from Columbia

University School of Law in 1982 (J.D. Stone Scholar). While there I was an editor of

the Columbia Law Review.

3. The Public Interest Law Center of Philadelphia was incorporated in

1974 by the Chancellor of the Philadelphia Bar Association and four past and future

Chancellors to ensure the availability of a full-time, professional staff of lawyers devoted

to systemic reform for the benefit of the public.

4. Today the Law Center is dedicated to advancing the Constitutional

promise of equal citizenship to all persons irrespective of race, ethnicity, national origin,

disability, gender or poverty. We use public education, continuing education of our

clients and client organizations, research, negotiation and, when necessary, the courts to

achieve systemic reforms that advance the central goals of self-advocacy, social justice

and equal protection of the law for all members of society.

5. The Law Center accepts litigation and other matters that we determine

further our mission, regardless of the particular subject matter. Subject matters on which

we have and are currently focusing include: 1) quality and equality in funding public education; 2) representing children with disabilities and their parents to obtain a free and appropriate education as required by the Individuals with Disabilities Education Act; 3) race and gender discrimination in employment and housing; 4) discrimination in zoning and other public services; 5) unnecessary institutionalization of persons with mental retardation; 6) voting; 7) securing healthcare for children enrolled in Medicaid.  A statement of our recent achievements is attached.  More information about our current activities can be found on our website at www.pilcop.org.

      6. The Public Interest Law Center is a tax exempt corporation organized under Section 501 (c)(3) of the Internal Revenue Code.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 18, 2007

Jennifer R. Clarke

## The Public Interest Law Center of Philadelphia
### 2006-2007 Report of Accomplishments

**The Law Center Mission:** *The Law Center is dedicated to advancing the Constitutional promise of equal citizenship to all persons irrespective of race, ethnicity, national origin, disability, gender or poverty. We use public education, continuing education of our clients and client organizations, research, negotiation and, when necessary, the courts to achieve systemic reforms that advance the central goals of self-advocacy, social justice and equal protection of the law for all members of society.*

## TWO NOTABLE RECENT ACCOMPLISHMENTS (2007)

**Law Center Suit to Secure Integrity of Voting Process Sustained:** On April 12, 2007, the Commonwealth Court of Pennsylvania held that state certifications of electronic voting machines used in 56 counties around the state are deficient because the Secretary of State did not adequately test the machines to ensure that they are reliable and provide a means of voter verification or independent audit. In its ruling, the Court sharply criticized the Pennsylvania Secretary of State for certifying Direct Recording Electronic Voting systems (DREs) "that provide no way for Electors to know whether their votes will be recognized." The case was filed August 15, 2006 by Michael Churchill of the Public Interest Law Center of Philadelphia, Mary Kohart, a partner at Drinker Biddle LLP and Marian K. Schneider on behalf of 26 individual Pennsylvania voters who alleged that their votes were at risk of being lost or altered because of operational or security failures of the Pennsylvania-certified systems.

**Unequal and Unfair Transportation Increase Stopped:** Joining a lawsuit commenced by the City of Philadelphia, the Law Center persuaded a Pennsylvania judge to halt a fare increase that would have unfairly and unequally harmed people who needed to ride more than one bus or trolley to get to their schools or jobs. Representing two students and advocacy groups for children, the Law Center and the City of Philadelphia claimed that a decision by the Southeastern Pennsylvania Transit Authority to eliminate transfers – discounted fares for a second vehicle – imposed a disproportionate and unfair burden on city residents who rode several buses or trolleys. In an opinion dated August 17, 2007, the judge called the transit authority's decision "capricious."

## CHILDREN'S HEALTH CARE

The Law Center and its clients continue their litigation and advocacy to ensure that states throughout the nation provide prompt and effective medical services for poor children in accordance with Title XIX of the Social Security Act. The Law Center is currently litigating class action cases in Oklahoma and Florida and is in contact with advocates in other states. These cases build on our successful suit in Pennsylvania, *Scott v. Snider*, which was settled in 1995.

*Medicaid Suit* **Florida Pediatric Society v. Agwunobi** *Survives Challenges in 2007*:
The Law Center's Jim Eiseman, together with the Florida Office of Boies Schiller & Flexner, LLP, has been representing more than 1.6 million children enrolled in the Florida Medicaid program and other plaintiffs in a lawsuit filed in the United States District Court for the Southern District of Florida.  The suit seeks to improve the children's access to medical and dental care.  On January 11, 2007, after extensive briefing and oral argument, the District Court rejected Florida's efforts to dismiss the complaint on the grounds that Medicaid law does not contain a clearly articulated federal right which children may enforce in court, despite contrary decisions in federal courts in other parts of the country.  Florida's subsequent efforts to get the Court to reconsider its decision were turned down by the Court on April 24, 2007.  These favorable rulings have permitted plaintiffs to move forward with document discovery from the state which is critical to laying the evidentiary basis for a favorable judgment on the merits.

*Law Center Seeks Supreme Court Review of Medicaid Act in* **Oklahoma Chapter of the American Academy of Pediatrics v. Michael Fogerty**: On May 7, 2007, the Law Center asked the Supreme Court to review the decision of the Tenth Circuit Court of Appeals which held that the Medicaid Act does not require states to deliver medical services to children but merely pay for services if and when delivered. The decision arose in a case in which the Law Center's Jim Eiseman and its Oklahoma co-counsel Louis Bullock had proven at a 19 day trial that Oklahoma payments to doctors were so low that necessary services were not being provided to poor and working class children dependent upon Medicaid for their health care. The case is the first circuit court of appeals decision unequivocally to find the Medicaid Act requires only payment and not services.

*Law Center Settles Michigan Litigation:* **Westside Mothers v. Olsezewski**:
On August 13, 2007, Law Center attorneys settled an eight-year-old case on behalf of one million Michigan children enrolled in Medical Assistance.  The settlement preserved significant expansions made in 2006 to Michigan's highly-regarded Medicaid dental program and significant increases in reimbursement rates for preventative medical care. The settlement also requires state defendants for the first time to collect and produce data regarding children's access to primary and specialty care.  This data includes information on the number of children actually seen by each practitioner and the length of time each child must wait to obtain an appointment with a primary or specialty provider.  Finally, the settlement provides for ongoing consultation and dialogue among representatives of the plaintiffs and state officials.  The plaintiffs in the case were the Michigan Chapters of both the American Academy of Pediatrics and the American Academy of Pediatric Dentists, Westside Mothers, a Detroit advocacy organization, Families on the Move, an organization of foster care parents, and a class of children and their families.

## DISABILITIES RIGHTS

The Law Center's mission under this agenda is to end discrimination and abuse against persons with disabilities and secure their inclusion and full participation in all aspects of mainstream society, particularly with respect to:
- Education

2

- Community services
- The criminal justice system

***First Right to Know Act for Persons with Disabilities Enacted In Allegheny County:***
On May 26, 2006, the Chief Executive of Allegheny County signed into law a
groundbreaking new ordinance designed to ensure that persons with mental retardation
have access to information that will allow them to select high quality Home and
Community Based Services providers. The Law Center supported this work with its legal
opinion asserting the right of persons with disabilities to obtain important information
about these providers through ordinances enacted by local municipalities. The
information that must be made public includes: departmental Reviews and supporting
documentation; noncompliance findings, corrective action plans, incident management
reports, and statistics on work placement. This information was made available on the
County's website beginning in January 2007.

***Law Center Sues Pocono Mountain School District over District's Discriminatory Use
of English Speakers of Other Languages (ESOL) program:*** The Law Center's Judith A.
Gran filed a class action lawsuit on July 8, 2006 against the Pocono Mountain School
District and school officials in the Middle District of Pennsylvania on behalf of a student
suffering from learning disabilities.  Ralph Martinez's first and only language is English,
but when he began to struggle in his classes due to a learning disability that went
unidentified, he was placed in an English as a Second Language program without his
parents' knowledge, further hindering his educational progress. The Complaint alleges
that the defendants discriminated against Ralph and others similarly situated by placing
them in ESOL classes rather than evaluate their needs for special education. According to
the Complaint: "The policies and practices of the Pocono Mountain School District
systematically discriminate against students with Spanish surnames and Hispanic or
Latino Ancestry by placing them in classes for English language learners even though
they do not need such services and in fact are not even eligible for them."

***New Jersey Department of Education Sued by Law Center for Segregating Students
with Down Syndrome:*** On August 28, 2006 the Law Center's Jennifer Clarke, Thomas
Gilhool, and Barbara Ransom, along with lawyers from White & Williams LLP, filed a
lawsuit against the New Jersey Department of Education on behalf of Vincenzo Grieco, a
9-year old suffering from Down Syndrome, and his parents Kelly and Michael Greico.
Studies show that students with Down Syndrome may be educated in normal classrooms
alongside their non-disabled peers with the proper support and supplementary services –
at great benefit to both the student with Down Syndrome and the other students.  Despite
these findings, New Jersey continues to segregate students with Downs Syndrome, in
violation of the Individuals with Disabilities Education Act.  The complaint requests that
Vincenzo and other similarly situated students return to normal classrooms with the
proper aid that they are promised by IDEA.

***Law Center Secures Community Living Arrangements for Individuals with Disabilities
in Tennessee:*** The Law Center's Judith Gran and Barbara Ransom are representing
People First Tennesee, an organization that promotes the rights of individuals with

3

disabilities, in two class action lawsuits to close a total of seven institutions for the developmentally disabled, and move its residents to community living arrangements with appropriate services and facilities. One of these suits, *People First of Tennessee v. Arlington* was settled on February 15, 2007, though the settlement was originally opposed by the parent-guardian association. The settlement outlines a plan for closure of the Arlington Developmental Center and establishment of appropriate services for the former residents in the community.

***Law Center Fights For Equal Treatment Of Students With Disabilities In Collegiate Sports:*** In March 2007, the United States Court of Appeals reinstated a lawsuit filed by the Law Center's Barbara Ransom against the National Collegiate Athletics Association alleging that it intentionally discriminated against Michael Bowers for his learning disability. Michael Bowers was a star football player at Palmyra High School in New Jersey and was heavily pursued by top-tier football schools such as Temple and Iowa University. However, after schools learned that Michael had a learning disability and was enrolled in special education classes in high school, the schools stopped actively recruiting Michael, knowing that the NCAA would find him to be ineligible to play collegiate sports.

***Victory Against Stroudsburg Area School District Results In Guaranteed IED Services for Every Special Needs Student In The District:*** On March 27, 2007 the Pennsylvania Department of Education Bureau of Special Education ruled in favor of plaintiffs Charlene and Robert Cooney, the parents of a student with learning disabilities, in a complaint brought against the Stroudsburg Area School District. The ruling was significant because it required that the school district provide necessary resources and supplemental educational services not only for the Cooney's son RJ, but for all other similarly situated students in the district.

***Law Center's Director of Disability Projects Testifies in Support of Proposed Regulations on Placement of Children with Disabilities in Regular Classrooms:*** On April 12, 2007, the Law Center's Director of Disability Projects, Judith A. Gran, testified before the Pennsylvania State Board of Education in support of proposed new regulations in 22 Pa. Code Chapter 14 which make clear that a student cannot be removed from regular class because he cannot achieve at the same level as typical classmates and that instead the relevant inquiry is whether the student can, with supplementary aids and services, make progress in the goals in his own Individual Education Plan (IEP). Ms. Gran explained the benefit of the proposed regulation to all children. "Research has shown that children with the most severe disabilities gain tremendous educational benefit when they are taught in regular class with needed supplementary aids, services and supports….[and] that all children benefit when children with disabilities are educated in regular class and benefit even more when the supplementary aids and services needed to teach students with disabilities are brought into regular classrooms."

***Law Center Victory Ensures Availability of Methadone Treatment for Recovering Addicts in Pennsylvania:*** On June 15, 2007, a unanimous appellate court ensured that Pennsylvanians seeking to rid themselves of heroin addition will have access to

methadone treatment which, according to the sources quoted in the court's opinion, "has been used for more than 30 years to effectively and safely treat opioid addiction." The court struck down a discriminatory Pennsylvania zoning law that had effectively banned new methadone treatment centers by allowing them only in areas that would be inaccessible to their intended clients, finding that these restrictions were based in "generalized prejudice and fear," and therefore in violation of the Americans with Disabilities and The Rehabilitation Acts.  The suit was brought by lawyers Barbara E. Ransom and chief-counsel Michael Churchill of the Public Interest Law Center of Philadelphia on behalf of New Directions Treatment Services (NDTS), a methadone treatment provider, and its clients.

***Court of Appeals Upholds Supports and Services to Young Children:***  On June 15, 2007, an appellate court ruled on a rarely-litigated provision of federal law which requires that services be provided to infants and toddlers with disabilities.  The law recognizes that such services can enhance a child's opportunities for success in school if provided early.  The court upheld a lower court decision which faulted the county agency for failing to provide twin toddlers necessary services in their natural environment.

***Lower Merion School District sued on grounds of systematic discrimination against African American students:*** Five African American families from Lower Merion School District are joined by Concerned Black Parents, Inc. and The NAACP Mainline Branch as plaintiffs in a lawsuit filed on July 30, 2007 as a class action against the Lower Merion School District.  The Complaint alleges that the Lower Merion School District routinely segregates African American students into below grade level or modified classes that provide them with a substandard education.  The Law Center's Barbara Ransom is lead counsel for the case. The Individuals with Disabilities Education Act and the Elementary and Secondary Education Act, require the District to provide these students and the members of the class access to the same general education curriculum and quality education which Lower Merion provides to their similarly situated peers. Although only 7.5% of approximately 6,800 students enrolled in the Lower Merion School District are African American, the separate classes where the District places Plaintiffs and class members are 90 - 100% African American.  The Complaint alleges that, "such grouping can only be attributed to the intentional segregation of these students."

***Law Center's Historic Gaskin Settlement Continues to Yield Important Benefits:*** In late 2005, the Law Center settled its *Gaskin* class action suit against Pennsylvania Education officials for failing to enforce the integration mandate of the Individuals with Disabilities Education Act. To ensure that students in need of special education would  have access to appropriate resources, the settlement established an advisory panel to administer an assessment of each school district's needs in "research-based practices and the provision of supplementary aids and services in regular classes," as well as state-funded discretionary grants to pay for school district initiatives that use training and technical assistance to overcome gaps in knowledge and skills identified by the assessment. At the end of 2006, the funding portion of the settlement became a reality when Pennsylvania Secretary of Education Gerald Zahorchak announced $1.1 million in "inclusive practices minigrants" to 74 school districts to support "the development and expansion of effective

5

instruction that encourages meaningful participation in regular education settings." In August 2007 the Law Center and its clients were invited to advise the Philadelphia School District as they work to improve the services offered to students with disabilities in the district under the terms of the settlement.

***Individual Students with Disabilities Receive Appropriate Services and are Included in Regular Classrooms with Law Center's Help:*** In addition to the Law Center's class action cases and major advocacy work, its lawyers represent dozens of individuals seeking access to the services and inclusion in with their non-disabled peers that all children with disabilities are promised under the terms of the Individuals with Disabilities Education Act (IDEA): "a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living." The Law Center routinely succeeds in securing supports and services, inclusion and compensatory education for these clients, whether in the form of services or monetary reimbursement for the services they were denied.  The following are examples of such cases:

- *Hornstein v. Centennial E.D. PA:* A suit to obtain appropriate placement and services for a child with learning disabilities, filed July 26, 2006 by the Law Center's Judy Gran and Jennifer Clarke.
- *McDermott v. Delaware County:* A suit to obtain appropriate services and placement for an autistic child, filed by the Law Center's Barbara Ransom
- *Greenwood v. Wissahicken S.D. EDPA:* Compensatory Education and full inclusion granted on May 27, 2006 in a challenge to the placement of a child with multiple disabilities, brought by the Law Center's Judy Gran.
- *Pierce v. Lower Merion School District:* A suit alleging improper use of disciplinary and expulsion remedies for a 15 year old with an emotional disturbance label, brought by the Law Center's Barbara Ransom, and settled in September 2006.
- *Gilligan v. Springfield School District:* The Law Center's Judy Gran represented a student with Epilepsy in this case.  The suit was settled in November 2006 with the student receiving compensatory education in the form of private services.

## EDUCATION FUNDING AND QUALITY

The Law Center's mission under this agenda is to make *Brown v. Board of Education* a living reality, ensuring equal access for all children to a quality educational experience.

The Law Center is working closely with its clients and collaborators to pursue equalization of resources for all of Pennsylvania's school children.

***Philadelphia Bar Association Sponsors Forum on Public School Funding:*** In October 2006 the Law Center, along with and Janet Stotland from the Education Law Center, organized a forum for The Philadelphia Bar Association. Led by Philadelphia School District CEO Paul Vallas, Congressman Chaka Fattah and activist and leader Helen Gym, the forum focused on the finances of the district and the need for new state and local

funding. The forum followed the adoption of a resolution by the Bar Association's Board of Governors urging state action to create a fair funding formula.

***Law Center Releases Report Analyzing Data on Inequalities in State Funding for Public Education:*** On June 21, 2007, the Law Center released the most recent of its reports analyzing data from the Pennsylvania Department of Education on expenditures and revenues of school districts. The Law Center has conducted analysis of per pupil spending patterns since 1994, revealing the serious statewide disparity in education spending, not only among all of the districts but also between largely minority and largely white school districts. In the most recent report, covering expenditures in 2005-06, the Law Center reveals that state funding for school districts in Pennsylvania reached an historic new low as a proportion of the total cost of funding schools. As a result, gaps between what the top 20 percent of the state's school districts were able to spend per student and what the rest of the school districts spent on their students widened. The gap between spending by the Philadelphia school district and other schools in its region also increased.

***Law Center Provides Advice and Assistance on Legislation to Improve State Funding Formula:*** Taking action in response to this pressing issue, the Law Center worked with Representatives Nicholas Micozzie and Kathy Manderino to draft House Bill 1544, the Successful Schools Act of 2007 in June 2007. This bill, which is endorsed by twenty-three state representatives from around the state and both parties, would create a new state funding formula which would provide all school districts with the funds necessary to meet the state's 2011 PSSA standards.

***Law Center Testifies on Steps to Increase School District Funding:*** Michael Churchill testified before the School Reform Commission and before the City of Philadelphia's Education Task Force to urge the District and City to seek increased revenues necessary for academic improvement, not for the City alone but in conjunction with the 380 other districts around the state adversely affected by the failure of the state to have a fair and equitable funding formula. He and Executive Director Jennifer Clarke have been meeting with civic and business leaders to urge their support for this important reform.

## PARTICIPATION IN CONFERENCES

- On Wednesday, May 31, 2006, Barbara Ransom and the Education Law Center conducted a free audio-teleconference training, intended to help understand how the Gaskin Settlement and other recent court decisions impact the Least Restrictive Environment (LRE) mandate and inclusive practices for students with disabilities in Pennsylvania.

- On Wednesday, June 14, 2006, Tri-State Area School Study Council, Administrative and Policy Studies, School of Education, and The University of Pittsburgh School Law presented the Ninth Annual Dr. Samuel Francis School of Law Symposium. During the symposium, Barbara Ransom spoke to an audience of attorneys and educators about "the Challenge of Implementing the Gaskin Settlement."

- Barbara Ransom was a keynote speaker at the 34th National Down Syndrome Congress in Atlanta, Georgia that was held July 21st through July 23, 2006. Her address to the audience of 2000 people was entitled "IDEA: Make no Mistakes, It's About Politics"

- On October 28, 2006, the Law Center's Judith Gran presented at a conference on special education inclusion sponsored by a project at Temple University's Institute on Disabilities entitled, Competence and Confidence: Partners in Policymaking (C2P2). The conference was attended by special education teams (instructors, their administrators, and the parents of their students) from 15 schools across Eastern Pennsylvania. She spoke on the legal history of special education inclusion in Eastern Pennsylvania with specific reference to the Gaskin settlement. The conference achieved substantive results by requiring each team to complete an Inclusion Action Project.

- Judith Gran was invited to participate in a conference convened by the Southern Disability Law Center and Southern Poverty Law center to discuss concrete strategies to address the "schoolhouse to jailhouse" pipeline.  At this meeting of leaders in related fields, a plan for a coordinated national agenda for litigation and advocacy will be developed.

- Barbara Ransom was a presenter at the National Center for Culturally Responsive Educational Systems (NCREST) conference in Washington, DC, held February 7-9, 2007.  The topic of the conference was "Leadership For Equity And Excellence: Transforming Education."

- In March, 2007 Law Center attorney Barbara Ransom addressed the issue of "How to Use the Gaskin Settlement to Achieve Inclusion Education" as a keynote speaker at the First Annual Inclusion Education Conference, "Inclusive Education: Making it Happen" in Cranbery, PA, organized by the PEAL Center, PA Tash and PDE/BSE. Over 400 parents, students with disabilities, educators, and other professionals were in attendance.

- The Law Center's Chief Counsel Michael Churchill spoke to the Pennsylvania Bar Association Minority Attorney Conference on March 22, 2007 to address the issue of Public School funding gaps.  His talk was entitled "Public Education Finance in Pennsylvania: Unequal and Inadequate."

## *AWARDS AND RECOGNITION*

- On September 17, 2006, the Society for Developmental and Behavioral Pediatrics presented Thomas Gilhool and the Law Center with its Special Recognition Award in appreciation of the Law Center's years of dedicated work on behalf of children with special developmental and behavioral needs.

- On October 18, 2006, the Law Center recognized the distinguished career of Jerome Balter, on the occasion of his retirement.  Mr. Balter was an engineer for over thirty years before he joined the Law Center in 1978, where he concentrated his practice in environmental law. Among his most notable legal achievements is the enactment of Right-to-Know legislation in Philadelphia which spurred the passage of similar laws in numerous other states including New Jersey, as well as a federal law modeled on those local initiatives.

- On December 5, 2006, the Law Center's Thomas Gilhool, who retired in 2006 after a distinguished 41-year career as a public interest lawyer, was recognized with the coveted Andrew Hamilton Award from the Public Interest Section of the Philadelphia Bar Association.  This prestigious award is given annually to a lawyer who has demonstrated a personal vision and commitment to the mission they serve, innovation in their work, and clear results achieved throughout their career.

- In February 2007, Thomas Gilhool received the Doctor of Humane Letters from Holy Family University, where he addressed the graduating class, urging them to take action to improve the lives of those suffering in their community.

- In June 2007, Syracuse University awarded Thomas Gilhool an honorary degree of Doctor of Education in recognition of his groundbreaking work on behalf of people living with disabilities, enabling them to live as active participants in their communities – in her letter inviting Tom to receive the degree, the school's President noted that inclusion of students with disabilities was a hallmark of Syracuse's School of Education.

- In its annual *Super Lawyer* issue, published in June 2007, Philadelphia Magazine recognized executive director Jennifer R. Clarke for her accomplishments as a lawyer in the Civil Rights field.  Ms. Clarke received similar recognition in 2006.



# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                                           :

GENERAL INSTRUMENT CORP.          :          CIVIL ACTION NO. 01-3051 (LR)
SECURITIES LITIGATION                  :

**DECLARATION ON BEHALF OF THE CITY BAR JUSTICE
CENTER CERTIFYING 501 (c) (3) STATUS**

I, Barbara Berger Opotowsky, declare as follows:

I am the Vice President of the City Bar Justice Center and of Association of the
Bar of the City of New York Fund, Inc.  I understand that there is a residual balance left
in the Settlement Fund from the above-captioned action that may be distributed to "non-
sectarian, not-for-profit, 501(c)(3) organization(s)" pursuant to Orders entered in the
above-captioned action.  The City Bar Justice Center is the major program of Association
of the Bar of the City of New York Fund, Inc., a non-sectarian, not-for-profit
organization as provided under I.R.C. Section 501 (c ) (3).

Attached hereto as Exhibit A is a brochure summarizing the City Bar Justice
Center's pro bono activities on behalf of those in need, particularly in the areas of
immigrant justice, economic justice and family justice.

I hereby declare under the penalty of perjury under the law of the United States of
America that the foregoing is true to the best of my knowledge, information and belief.

Dated October 30, 2007

_____
Barbara Berger Opotowsky

**Internal Revenue Service**

Department of the Treasury

District
Director

10 MetroTech Center
625 Fulton St., Brooklyn, NY 11201

Date: **JUN 2 8 1995**

Association of the Bar of the
 City of New York Fund, Inc.
42 West 44th Street
New York, NY  10036-6686

Person to Contact:
Patricia Holub
Contact Telephone Number:
(718) 488-2333
EIN:  13-6003018

Dear Sir or Madam:

Reference is made to your request for verification of the
tax exempt status of Association of the Bar of the City of
New York Fund, Inc.

A determination or ruling letter issued to an organization
granting exemption under the Internal Revenue Code remains in
effect until the tax exempt status has been terminated, revoked
or modified.

Our records indicate that exemption was granted as shown below.

Sincerely yours,

*Patricia Holub*

Patricia Holub
Manager, Customer
Service Unit

Name of Organization:  Association of the Bar of the
                        City of New York Fund, Inc.

Date of Exemption Letter:  April 1948

Exemption granted pursuant to section 501(c)(3) of the
Internal Revenue Code.

Foundation Classification (if applicable):  Not a private
foundation as you are an organization described in section
509(a)(3) of the Internal Revenue Code.

```
N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS
                                        ALBANY, NY  12231-0001

                        FILING  RECEIPT
================================================================
ENTITY NAME : ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK FUND, INC.


DOCUMENT TYPE : ASSUMED NAME CERTIFICATE


SERVICE COMPANY  :      +++  NO SERVICE COMPANY  +++          CODE:

================================================================
FILED: 09/30/2004            CASH#: 130109            FILM#: C353492-2

PRINCIPAL LOCATION
------------------

42 WEST 44TH STREET

NEW YORK
NY    10036
```



```
COMMENT:


ASSUMED NAME
------------
CITY BAR JUSTICE CENTER
```

| FILER | * | FEES | : | 135.00 | PAYMENTS: 135.00 |
|-------|---|------|---|--------|------------------|
| ----- | * | ---- | | | -------- |
| | * | FILING | : | 25.00 | CASH  : |
| | * | COUNTY | : | 100.00 | CHECK  :00135.00 |
| | * | COPIES | : | 10.00 | C CARD  : |
| BARBARA BERGER OPOTOWSKY ASSOCIATIO | * | MISC | : | | |
| THE BAR OF THE CITY NY | * | HANDLE | : | .00 | |
| 42 WEST 44TH STREET | * | | | | REFUND: |
| NEW YORK          NY   10036 | * | | | | ------ |

```
                    DO3HD104                    DOS-281 (8/98)
```

**Overview of the City Bar Justice Center**

The City Bar Justice Center is the public service affiliate of the New York City Bar. It was founded in 1946 to "facilitate and improve the administration of justice." By harnessing resources from the legal profession, the City Bar Justice Center annually provides direct legal representation, information, and advocacy to nearly 25,000 indigent and low-income New Yorkers from all five boroughs. The City Bar Justice Center's mission is to increase access to justice by leveraging the resources of the New York City legal community. Drawing upon our relationship with the New York City Bar, the Justice Center fosters strategic relationships among the private bar, the judiciary, legal aid providers and other organizations; provides legal assistance to those in need; mobilizes lawyers, law firms, corporate legal departments and other legal institutions to provide pro bono legal services; educates the public on legal issues and impacts public policy.

The City Bar Justice Center works in three main areas: Immigrant Justice, including the Immigrant Women and Children Project and Refugee Assistance Project; Economic Justice, including the Pro Bono Consumer Bankruptcy Project, the Elderlaw Project, the Legal Clinic for the Homeless, the Neighborhood Entrepreneur Law Project and the Cancer Advocacy Project; and Family Justice including the Uncontested Divorce Project and the Contested Divorce Project. In addition, the City Bar Justice Center runs New York City's busiest Legal Hotline, assisting 750 callers each month on a range of civil legal issues, and operates the City Bar Public Service Network which matches lawyers with nonprofit legal and non-legal organizations on volunteer projects. The City Bar Justice Center serves clients in all five borough of New York City. In addition, the Legal Hotline also fields calls from areas just outside the borders of New York City (i.e. Westchester, Nassau, Rockland counties, etc.)

## CHANGING LIVES THROUGH THE LAW

The City Bar Justice Center increases access to justice by leveraging the resources of the New York City legal community. As the pro bono affiliate of the New York City Bar, the Justice Center:

- provides legal assistance to those in need;
- mobilizes lawyers, law firms, corporate legal departments, and other legal institutions to provide pro bono legal services;
- educates the public on legal issues and
- impacts public policy.

The City Bar Justice Center annually provides direct legal representation, information, and advocacy to over 25,000 poor and vulnerable New Yorkers: immigrants, battered women, the homeless, the elderly, cancer survivors, consumers filing for bankruptcy, struggling small businesses, persons with criminal records, and others in need who cannot otherwise access legal resources.



**CITY BAR JUSTICE CENTER**

*Pro Bono Affiliate of the New York City Bar*

**Maria Imperial**
**Executive Director**

**1**

---

The City Bar Justice Center's programs are focused in three areas: Immigrant Justice, economic Justice, and Family Justice. The Center also operates the City's busiest legal hotline and special projects.

## IMMIGRANT JUSTICE

**The Immigrant Women and Children Project** empowers immigrant victims of domestic violence to seek freedom from their abusers and attain legal status in the United States. The Anti-Trafficking Project also trains law enforcement, community-based organizations, and NGOs about the legal remedies available to victims of human trafficking.

**The Refugee Assistance Project** represents asylum seekers who have suffered torture and other forms of persecution in their home countries and who are seeking asylum in the United States.



**2**

---

## ECONOMIC JUSTICE



**The Neighborhood Entrepreneur Law Project** provides legal assistance to low-income microentrepreneurs in the initial stages of structuring a company or strengthening an existing business.

**The Consumer Bankruptcy Project** advises low-income consumers of their rights and responsibilities regarding outstanding debts, assists debtors filing pro se Chapter 7 cases, and provides pro bono representation to debtors in contested matters.

**The ElderLaw Project** maintains the dignity and independence of elderly people by giving advice and assistance regarding wills, living wills, health care proxies, powers of attorney, government benefits, and consumer issues. The Project also operates a statewide helpline in collaboration with Legal Services for the Elderly.

**The Legal Clinic for the Homeless** provides legal assistance and education to the homeless, and reaches out to individuals and families of shelters, drop-in centers, and fair hearing sites.

**3**

---

**The Cancer Advocacy Project** provides cancer patients, survivors and their families with legal information and pro bono legal assistance on issues relating to discrimination in the workplace, health law, insurance issues, access to public benefits, and wills.

**The Re-Entry Project** provides legal services to persons with criminal records who are victims of the hidden and collateral consequences of having a criminal record, including reviewing and clearing up rap sheets, assisting with filing for Certificates of Relief from Disabilities (CRD) or Certificates of Good Conduct (CGC), and representing clients in hearings challenging denials of public housing applications based on past criminal convictions.

## FAMILY JUSTICE

**The Uncontested Divorce Project** assists divorce seekers filing pro se uncontested divorces.

**The Contested Divorce Clinic** provides consultations with experienced volunteer matrimonial practitioners for unrepresented litigants embroiled in contested divorce cases.



**4**

## YOU CAN MAKE A DIFFERENCE!

### Share Your Time

The City Bar Justice Center invites all attorneys, legal assistants, and law students to join our efforts to provide desperately needed legal assistance and advocacy to low-income New Yorkers. Try something new, expand your legal experience, and gain the satisfaction of giving back to your community. For more information about our programs and volunteer opportunities please contact:

Director, Pro Bono Initiatives
(212) 382-4714
citybarjusticecenter@nycbar.org

### Give Your Dollars

The City Bar Justice Center relies heavily on contributions to carry out our work. We leverage these contributions to secure matching gifts from foundations and other sources. You can make a tremendous difference in the lives of poor men, women, and children throughout New York City by sending in your tax-deductible contribution today. For more information on giving opportunities please contact:

Director, Development
(212) 382-6714
citybarjusticecenter@nycbar.org

42 West 44th Street
New York, NY 10036
www.citybarjusticecenter.org





## LEGAL HOTLINE
## (212) 626-7383

The Legal Hotline offers legal information, advice, referrals, and brief services to low-income New Yorkers who cannot afford a private attorney or do not have access to legal representation. The hotline is open Monday through Friday from 9:00 a.m. to 12:30 p.m.

## LawHelp/NY
## (www.LawHelp.org/NY)

### Improving Access to Legal Resources

LawHelp.org/NY is an online, legal-information clearinghouse that provides low-income people throughout the State of New York with referrals to free legal services, information about their legal rights, links to social services and government agencies, and information about the court system. LawHelp is a collaborative project of the City Bar Justice Center, Legal Services for New York City, Pro Bono Net, The Legal Aid Society, Volunteers of Legal Service, the New York State Bar Association, the Greater Upstate Law Project, the Legal Aid Society of Northeastern New York, and Legal Assistance of Western New York.

**5**

## THE CITY BAR PUBLIC SERVICE NETWORK

The City Bar Public Service Network serves as a clearinghouse for pro bono opportunities throughout New York City and develops innovative legal and non-legal volunteer placements for attorneys seeking public interest volunteer work. The Network works with nonprofits to develop volunteer projects and facilitates the placement of lawyers with opportunities that match their interests and skills. By matching the volunteer with the opportunity best suited to his/her needs and providing ongoing support, the Network helps attorneys get the most out of their volunteer experience.

The Network also provides technical assistance to law firms and corporate legal departments seeking to develop or enhance their pro bono programs.



**6**



# CITY BAR JUSTICE CENTER

# CHANGING LIVES THROUGH THE LAW





# EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CIVIL ACTION |
| | : | |
| GENERAL INSTRUMENT SECURITIES | : | NO. 01-3051 |
| LITIGATION | : | |

## DECLARATION OF BRUCE H. COZZI REGARDING REMAINING FUNDS AVAILABLE FOR CY PRES DISTRIBUTION

I, Bruce H. Cozzi, hereby declare and state as follows:

1.      I am the Fund Controller of Gilardi & Co. LLC ("Gilardi"), and have personal knowledge of the facts described herein.  Gilardi was engaged to serve as Settlement Administrator in the administration of the settlement in the above captioned litigation (the "Settlement").

2.      Pursuant to Order of this Court, on August 29, 2003 Gilardi caused the distribution of $30,375,000.11 to 7,349 approved claimants.  Further, on September 13, 2006 Gilardi caused the distribution of $119,206.16 from residual funds to 1,183 approved claimants who cashed their initial distribution checks and who would receive at least $10.00.

3.      Currently, $6,572.93 remains in the fund from un-cashed stale dated checks ($2,341.32), funds returned from institutions due to accounts being closed ($143.09), interest earned in excess of interest distributed ($868.42), federal tax refunds ($1,108.83), a check re-issue in process ($11.19), undistributed funds ($0.08) and a reserve for 2007 tax compliance costs ($2,100.00).

4.     I am informed that a 2007 tax return will not be required.  Therefore, after reserving for the in-process check reissue $6,561.74 will be available for cy pres distribution as shown on the Funds Analysis attached hereto as Exhibit A.

Declared under penalty of perjury that the foregoing is true and correct, this declaration is respectfully submitted by the undersigned this 25th day of October 2007.

Bruce H. Cozzi

EXHIBIT A

CONFIDENTIAL

# Funds Analysis
### for the purpose of Cy Pres
### as of October 23, 2007

## General Instruments

Prepared by  KS 9/27/07
Reviewed by BAC 9/28/07
**Updated 10/25/07**

**SOURCES OF FUNDS**

| | | |
|---|---:|---:|
| Funds received August 2003 | $30,375,000.00 | |
| Additional funds received May 2004 | 6,568.92 | |
| Duplicate payment refund | 18,693.73 | |
| Funds returned account closed #102488 | 55.03 | |
| Claimant refused check #101946 | 44.77 | |
| Claim filed in error | 43.29 | |
| Bank error | 0.03 | |
| Tax refund | 3,848.55 | |
| Interest earned | 17,989.09 | |
| Total Source of Funds | | $30,422,243.41 |

**USES OF FUNDS**

| | | |
|---|---:|---:|
| 1st Distribution 7,349 checks on August 29, 2003 | (30,375,000.11) | |
| 2nd Distribution 1,183 checks on September 13, 2006 | (119,206.16) | |
| Void issuance | 75,309.62 | |
| Defective checks | 18,626.66 | |
| 58 Uncashed stale dated checks | 2,352.51 | |
| Net distribution checks paid | | (30,397,917.48) |
| Income taxes paid | | (2,000.00) |
| Tax compliance fees paid | | (7,700.00) |
| Administration fees paid | | (8,053.00) |

**FUND BALANCE**      **$6,572.93**
as of October 23, 2007

Reserve for reissue in process - (CCD)     (11.19)

**FUNDS AVAILABLE FOR CY PRES**     **$6,561.74**